REID DEVELOPMENT CORPORATION, PLAINTIFF-APPEL-
LANT, v. TOWNSHIP OF PARSIPPANY-TROY HILLS, A
MUNICIPAL CORPORATION, ET AL., DEFENDANTS-
RESPONDENTS.

Argued March 3, 1952—Re-argued May 12, 1952—
Decided June 23, 1952.

230

Mr. *Samuel A. Larner* argued the cause for appellant (*Mr. Abraham M. Herman,* attorney).

Mr. *John H. Grossman* argued the cause for respondents.

The opinion of the court was delivered by

HEHER, J. By this civil action in lieu of *mandamus,* plaintiff seeks to compel the defendant township to extend its water mains laid in Intervale Road through an intersecting street known as Fairway Place, for a distance of 600 feet, "under the usual terms and conditions," to provide water for lands of plaintiff on either side of Fairway Place in process of development for residential uses.

Plaintiff applied for the extension on April 26, 1950, and again on May 31, ensuing; and not long thereafter, on June 14, it was advised in writing by the local governing body that the township then had "a more than ample supply of lots" having a frontage of less than 100 feet; that the Intervale Lake area, which includes plaintiff's lands, "deserves lots of 100 feet frontage," and "In order to benefit the township by having your development built up in 100 foot lots, * * * we are willing to reduce your improvement costs by supplying all the labor for installing whatever mains, hydrants, fittings, etc. are needed on your land for a water system, and by rebating to you over a period of years out of water rental received from your parcels fronting on the said water system thus installed on your land the cost of the materials needed in such system—providing you revise your map in 100 foot frontage lots approved by the Planning Board." Reference was made to "sad cesspool and septic tank experiences in several parts of the Township where, before the adoption of a Zoning Law, lots smaller than 100 foot frontage have been built on." Plaintiff rejected the condition and thereupon brought this proceeding. The Superior Court ruled that "the extension of a water main by a municipality is a governmental function" calling for "the exercise of a degree of discretion on the part of the municipality," and there was no abuse of discretion here. We have a different view.

The action taken by the local authority was arbitrary and unreasonable. The water facility is a municipally-owned public utility established under legislative authority.

R. S. 40:62–47, *et seq.* The provision of water for the public and private uses of the municipality and its inhabitants is the exclusive province of the local agency; and it is elementary that the exercise of the power must be in all respects fair and reasonable and free from oppression. There can be no invidious discrimination in the extension of the service thus undertaken by the municipality as a public responsibility. Equal justice is of the very essence of the power. Impartial administration is the controlling principle. The rule of action must apply equally to all persons similarly circumstanced. There is a denial of the equal protection of the laws unless the water service be available to all in like circumstances upon the same ̇terms and conditions, although the rule of equality may have a pragmatic application. Persons situated alike shall be treated alike. *Washington National Insurance Co. v. Board of Review,* 1 *N. J.* 545 (1949); *Librizzi v. Plunkett,* 126 *N. J. L.* 17 (*Sup. Ct.* 1940); *Millville Improvement Co. v. Millville Water Co.,* 92 *N. J. Eq.* 480 (*Ch.* 1921); *Yick Wo v. Hopkins,* 118 *U. S.* 356, 6 *S. Ct.* 1064, 30 *L. Ed.* 220 (1886); *People v. Kuc,* 272 *N. Y.* 72, 4 *N. E. 2d* 939 (*Ct. App.* 1936).

██ There are cases holding that the establishment of a water system and its operation for protection against fire and other dangers to the public health and safety constitute a governmental function comprehended in the police power of the municipality. *Chicago v. Ames,* 365 *Ill.* 529, 7 *N. E. 2d* 294, 109 *A. L. R.* 1509 (*Sup. Ct.* 1937); *Canavan v. City of Mechanicville,* 229 *N. Y.* 473, 128 *N. E.* 882 (*Ct. App.* 1920). But there is general agreement that the distribution of water by a municipality to its inhabitants for domestic and commercial uses is a private or proprietary function which in its exercise is subject to the rules applicable to private corporations. This is the rule in New Jersey. *Lehigh Valley R. R. Co. v. Jersey City,* 103 *N. J. L.* 574 (*Sup. Ct.* 1927), affirmed 104 *N. J. L.* 437 (*E. & A.* 1928); *Fay v. Trenton,* 126 *N. J. L.* 52 (*E. & A.* 1941). See, also,

*Olesiewicz v. City of Camden,* 100 *N. J. L.* 336 (*E. & A.* 1924).

A public water company is under a duty as a public utility to supply water to all inhabitants of the community who apply for the service and tender the usual rates. The obligation includes the establishment of a distributive plant adequate to serve the needs of the municipality and the enlargement of the system to meet the reasonable demands of the growing community. The utility is under a duty to serve all within the area who comply with fair and just rules and regulations applicable to all alike. The obligation is enforceable by *mandamus.* *Bordentown v. Anderson,* 81 *N. J. L.* 434 (*E. & A.* 1911); *Woodruff v. East Orange,* 71 *N. J. Eq.* 419 (*Ch.* 1906); *Millville Improvement Co. v. Millville Water Co.,* cited *supra.* While it has been held that a municipality so engaged exercises a governmental discretion as to the extension of the water mains, governed largely by the extent of the need and economic considerations, the discretionary authority must be fairly and reasonably used; and the remedial process of *mandamus* may be invoked for an abuse of discretion if the extension be arbitrarily refused. *Lawrence v. Richards,* 111 *Me.* 92, 88 *A.* 92 (*Sup. Jud. Ct.* 1913); *City of Greenwood v. Provine,* 143 *Miss.* 42, 108 *So.* 284, 45 *A. L. R.* 829 (*Sup. Ct.* 1926); *Lukrawka v. Spring Valley Water Co.,* 169 *Cal.* 318, 146 *Pac.* 640 (*Sup. Ct.* 1915). See, also, 47 *L. R. A.* (*N. S.*) 656; 56 *Am. Jur.* 964 *et seq.* It would seem that no sound distinction can be made, in respect of the extension of the service, between a municipality which has undertaken to provide water to the community and a water company performing the function of a public utility. In *Chicago v. Northwestern Mut. Life Ins. Co.,* 218 *Ill.* 40, 75 *N. E.* 803 (*Sup. Ct.* 1905), it was held that when a municipal corporation not obliged to furnish water to its inhabitants undertakes to do so, it proceeds "not by virtue of the exercise of the power of sovereignty," but rather engages in "a business which is public in its nature, and belongs to that class of occupations or enter-

prises upon which public interest is impressed," and is under a duty to act reasonably and not arbitrarily in the fulfillment of that function and to "serve all who may apply on equal terms."

Here, the provision of water to the plaintiff landowner was conditioned not by a circumstance of action or being reasonably bearing upon the exercise of the function, but rather by wholly alien considerations related to planning and zoning; and this was not within the province of the governing body. Compare *Magnolia Development Co. v. Coles*, 10 *N. J.* 223 (1952). There was then no suggestion that the enlargement of the service was indefensible on economic grounds. The need was not denied; nor was it asserted that the cost would be prohibitive or greatly disproportionate to the return. Indeed, the municipality offered to "reduce the landowner's improvement costs" by supplying labor at the outset and by rebating over a period of years out of water rentals accruing from the extension the cost of materials required for the installation of a water system on plaintiff's lands. And no question is made now as to the need.

The stipulation of facts and the proofs reveal that it has been the practice of the municipality to provide extensions of the water system under the same or similar circumstances. While not a formula common to all cases, the enlargement was usually granted on terms that the land developer would bear the initial cost of the installation and be reimbursed to the extent of 75% of the outlay from the water revenues collected for taps on the added water line during a given period. the remaining 25% to be retained by the township for "its maintenance and pumping charges for furnishing water" to the new facility.

On the original argument it was contended on behalf of the municipality that by force of an ordinance adopted by the local governing body on August 15, 1951, subsequent to the entry of the judgment under review, the "old terms" are no longer permissible. We directed certification of the

ordinance and the disposition of the applications made thereunder, and reargument of the cause on the record as thus enlarged.

The ordinance provides thus: extensions of the water distribution system, at the instance of "developers of tracts approved by and through" the local planning board "and consented" to by the local governing body, shall be constructed pursuant to the rules and regulations of the planning board and under the supervision of the township's engineer and the superintendent of public works, "at the developer's own cost and expense," and shall be dedicated to the public use with title vested in the township. An "individual" may, in the discretion of the governing body, have an extension to serve his "individual property," also at his own expense. Again, it is provided that the township is under no obligation "to permit any requested extension"; the granting of the extension "shall rest solely within the discretion" of the governing body, and the township shall not be under the duty of reimbursement "for all or any part of the cost thereof." But the township may construct such extensions "as a general township obligation in such streets, avenues or roads where, in its discretion, it deems the public interest will be best served by the making of such extensions."

On the reargument the ordinance was defended as a valid exercise of the power granted by *R. S.* 40:62–47 and *R. S.* 40:62–77, but it was finally conceded that the regulation is null for want of a norm or standard governing the exercise of the discretionary authority. This concession is well founded. Under the principle cited *supra,* the regulation is *ultra vires.* It purports to vest in the governing body a naked and arbitrary power to grant or withhold consent to the expansion of the service. The discretion is absolute. The extension may be at the expense of the landowner in the one case and the township in another, depending upon the mere will of the governing body. There is no standard to insure impartial action. Access to water facilities is not a matter of grace. Rights of persons and of property cannot

by legislative fiat be made subject to the will or unregulated discretion of another. It matters not whether the facility is in the hands of the municipality or a privately-owned public utility. Arbitrary use of the power contravenes fundamental law and is not within the legislative province. See, in addition to the cases cited *supra, P. J. Ritter Co. v. Bridgeton,* 135 *N. J. L.* 22 (*Sup. Ct.* 1946), affirmed 137 *N. J. L.* 279 (*E. & A.* 1948); *Lipkin v. Duffy,* 119 *N. J. L.* 366 (*E. & A.* 1937). The virtue of an ordinance in the given circumstances lies in the formulation of a standard of action that precludes the exercise of arbitrary power.

It is vigorously urged that the extension of water mains by a municipality involves the exercise of a legislative or governmental discretion which precludes the remedy of *mandamus.*

 Where, as here, there was a plain abuse of authority, *mandamus* will lie to command performance of what under the clearly established or admitted facts constitutes a peremptory duty. Under *Article VI, Section V, paragraph 4* of the *Constitution of* 1947 and the implementing *Rule* 3:81, review, hearing and relief in lieu of prerogative writs shall be afforded as of right. Where there has been an abuse of discretion, the action may be vacated and fulfillment directed of what the law deems an imperative obligation. The discretion beyond control by *mandamus* is that exercised under the law, and not contrary to law. *Huidekoper v. Hadley,* 177 *F.* 1, (*C. C. A.* 8, 1910), *certiorari* dismissed, 223 *U. S.* 735, 32 *S. Ct.* 529, 56 *L. Ed.* 635 (1911). *Vide Bordentown v. Anderson* cited *supra; Millville Improvement Co. v. Millville Water Co.,* cited *supra; Woodruff v. East Orange,* cited *supra.* Where there is an omission to do what the law clearly and unmistakably directs as an absolute duty, *mandamus* is an appropriate remedy. If by reason of a mistaken view of the law or otherwise, there has been in fact no actual and *bona fide* exercise of discretion, *e. g.* where the discretion turned upon matters not contemplated by the law, *mandamus* will lie. This is a recognized

exception to the general rule. *Riesland v. Bailey,* 146 *Or.* 574, 31 *Pac. 2d* 183 (*Sup. Ct.* 1934); 929 *A. L. R.* 1207.

Here, wholly extraneous considerations governed the exercise of the discretionary authority. On the admitted facts, the extension of the water facilities was plaintiff's right; and it was an abuse of discretion to use the grant as a means of coercing the landowner into acceptance of the minimum lot-size restriction upon his lands, however serviceable to the common good. Such benefits are to be had through the channels prescribed by the law. *Johnston v. Belmar,* 58 *N. J. Eq.* 354 (*Ch.* 1899); *Magnolia Development Co., Inc., v. Borough of Magnolia,* cited *supra.* There is no statutory authority for this condition. Planning and zoning powers may not be exerted by indirection; the exercise of these functions must needs be in keeping with the principles of the enabling statutes. *Mansfield & Swett, Inc., v. West Orange,* 120 *N. J. L.* 145 (*Sup. Ct.* 1938); *Schmidt v. Board of Adjustment of the City of Newark,* 9 *N. J.* 405 (1952).

We are not cited to any statutory authority for laying upon the landowner the cost of construction of the new water mains. It is to be borne in mind that the plaintiff landowner is not the owner or possessor of all the lands on either side of Fairway Place that will have water service by means of the extension.

The judgment is reversed; and the cause is remanded for further proceedings conformably to this opinion.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.