[Civ. No. 19124.   First Dist., Div. One.   Nov. 29, 1960.]

BOIES AND SOULÉ (a Corporation), Appellant, v. EAST BAY MUNICIPAL UTILITY DISTRICT, Respondent.

Bob Lynn Edwards for Appellant.

Harold Raines, John B. Reilley and Frank E. Howard for Respondent.

COAKLEY, J. pro tem.*—This is an appeal from a judgment adverse to the petitioner in a mandamus proceeding.

For purposes of brevity the appellant, a corporation, will be referred to as Boies, and the respondent, a public utility district, as the District. Stripped to essentials, the facts are these: Boies, a subdivider, owning property within the boundaries of the District, applied to the District for water service to 20 lots. Some of these lots lay along Bacon Way. The others lay along Bacon Court. The two streets intersect. A water main of the District traverses Bacon Way. There is no water main along Bacon Court. Boies offered to pay the cost of extending the main from Bacon Way along Bacon Court to its lots farthest removed from Bacon Way. The water main on Bacon Way terminates at a District reservoir overlooking the two streets. The elevation at the reservoir is 100 feet or more above Boies' lots numbered 42, 43, 60 and 61, on Bacon Way. The elevations of the other 16 lots in the tract are within 100 feet of the elevation of the reservoir. Engineering data established that the minimum water pressure at Lots 42, 43, 60 and 61, without benefit of booster pumps, would be 40 pounds per square inch (40 p.s.i.) or better; that the pressure at the other 16 lots would be less than 40 p.s.i. in the absence of booster pumps; that servicing the lots on Bacon Court would not materially affect the flow of water through the Bacon Way main and that the lots on Bacon Court could be supplied with booster pumps which would then provide a minimum pressure of 40 p.s.i. to each of said lots.

Prior to this controversy the District adopted Regulations Governing Water Service. These regulations prescribe the conditions under which property within the District will be served with water. Section 2 provides that "If a principal part of the premises to be served does not front on an available and adequate main . . . the applicant will be advised of the terms and conditions which must be met before an application for service may be accepted." Section 3 provides that "If a principal part of the premises to be served does not lie along an available water main of adequate capacity and under

---

*Assigned by Chairman of Judicial Council.

proper pressure, it will be necessary to install a main extension in accordance with Section 4.'' Section 4A provides that ''In general, whenever an extension of a water main within the District boundaries is required because a principal part of the premises to be served does not lie along an available water main with adequate capacity and proper pressure, the extension will be installed after a contract based on one of the plans listed below has been executed by the applicant and the District.'' Then follow alternate plans for main extensions, the first calling for installation by the District at the expense of the property owner, and the second calling for main extensions by and at the expense of the property owner. Section 4B provides that ''The pipe specifications, point of commencement, cost to the applicant, and all other requirements for main extensions shall be determined by the District with proper allowance being made for future demand.''

The regulations also provide for serving premises, a principal part of which ''lies along and may be served by a water main of adequate capacity and under proper pressure.'' The regulations do not define ''proper pressure'' in terms of so many pounds, or otherwise. The evidence is undisputed, however, that prior to this dispute the District's engineering department established 40 p.s.i., at the meter, as an adequate or proper pressure; further, that it was fixed policy of the District not to provide service where the minimum pressure would be less than 40 p.s.i. except (1) where a principal part of the premises fronted on an existing main, and (2) the property owner agreed to install a booster pump and sign a low pressure waiver.

Eleven of Boies' 20 lots fronted on Bacon Way and the water main which traversed that street. Lots 51 and 59 fronted on Bacon Court, and initially no part of them touched upon Bacon Way. However, during the negotiations for water service, Boies set aside 20-foot strips running from each of said two lots, across other lots fronting on Bacon Way, so that those two lots thereafter were connected with Bacon Way and to the existing water main by the respective 20-foot strips. This left seven lots fronting on Bacon Court which nowhere touched or abutted on an existing main.

The District provided service to the 11 lots fronting on Bacon Way, and to Lots 51 and 59, at each of which the pressure was less than 40 p.s.i., after Boies met the usual conditions of installing booster pumps and executing a low pressure waiver. Boies was also required to sign an agree-

ment, by the terms of which demands for service to Lots 51 and 59 would be abandoned until a main was installed along Bacon Court but not exceeding 21 years from date of agreement. The principal provisions of this Conditional Service Agreement about which more will be said below, were proposed by Boies.

The District consistently advised Boies that, under its regulations and policy, it could not provide service to the remaining seven lots, all fronting on Bacon Court, unless Boies would enter into an agreement to (1) provide a tank site at a satisfactory elevation westerly of Bacon Court, (2) provide a right-of-way from such tank site to Bacon Court, and (3) pay the cost of a 6-inch main from the tank site to Bacon Court. The cost of the foregoing, to be borne by Boies, was estimated to be approximately $12,000. For its part the District offered to bear the cost of the tank and pumping plant, and the difference between the cost of a 6-inch main and a larger main from the proposed new tank to Bacon Court. The latter costs were estimated to be in excess of $80,000. Such additional reservoir and plant would assure adequate pressure to Bacon Court and other areas which might be serviced therefrom.

Boies declined to execute such an agreement and petitioned the Superior Court for a writ directing the District to furnish service to the seven lots in question. Following a trial lasting two days, the court filed findings and a judgment adverse to Boies. From that judgment Boies appeals. The following statement which appears in the appellant's closing brief clearly states the issue. We adopt it and proceed from there:

It is *not* our theory that we are entitled to water as an absolute right without compliance with the rules and regulations of the District, nor is it our theory that the rules and regulations of the District applied to others in the same area under similar circumstances are arbitrary or unreasonable. On the contrary, we assert that such rules (Def. Ex. G) are perfectly reasonable and we offer to comply with them—what we assert is that although we have offered to comply with the rules and regulations applied to others in the area, the District refuses to supply us water in accordance with these rules, but demands that we must do other onerous things not required of others in the same circumstances. This we contend is unjust discrimination.

■ The issue, then, is not the reasonableness of the District's regulations but whether the District discriminated against Boies in the application of its regulations.

Boies' case for discrimination rests on the fact that (1) the District is furnishing water to 11 lots fronting on Bacon Way and to Lots 51 and 59, where the minimum pressure, without benefit of booster pumps, is less than 40 p.s.i. while refusing service to seven lots on Bacon Court where the pressure, without benefit of booster pumps, is likewise less than 40 p.s.i.; and (2) that servicing said seven lots on Bacon Court will not materially affect the adequacy of the flow of pressure in the line on Bacon Way. Boies insists that there is no material difference between the two groups of lots, i.e., those fronting on Bacon Way and those fronting on Bacon Court, which, absent booster pumps, show a pressure less than 40 p.s.i. But there is this vital difference—a water main traverses Bacon Way and the lots being serviced except Lots 51 and 59, front on Bacon Way and the existing main, whereas there is no main along Bacon Court.

Lots 51 and 59 were granted service under the Conditional Service Agreement referred to above because, or ostensibly because, of the 20-foot strips which joined them to Bacon Way. We construe that agreement as constituting a mutual understanding that the 20-foot strips connecting Lots 51 and 59 to Bacon Way brought those lots within the provision of the District's regulations which called for serving premises which lay along an existing main. If it is to be Boies' position, as it appears to be in part, that servicing Lots 51 and 59 under such circumstances, while refusing service to other lots fronting on Bacon Court, constitutes discrimination against the latter lots, the answer is that it ill becomes Boies to propose and execute a contract for service to Lots 51 and 59, and then use it as a club for demanding service to other lots owned by it and not in any way physically connected with Bacon Way.

The District not only had the right but the duty to make classifications, and to enforce rules, regulations and practices. (Pub. Util. Code, § 11885.) Boies had the burden of proving discrimination in the application of the regulations adopted and the practices carried out by the District. (*Sminia* v. *Department of Water & Power* (1931), 119 Cal.App. 428 [6 P.2d 561].) The trial court properly found that Boies did not sustain its burden of proof. With the exception of Lots 51 and 59 the record is silent as to a single instance wherein the District extended services to premises not fronting on an existing main and where the pressure would be less than 40 p.s.i.

To bolster its position Boies argues that because the 40

p.s.i. requirement does not appear, as such, in the District's regulations it is unenforceable. But Boies cites no authority holding that a public utility must spell out in its regulations every administrative and engineering guide employed by it in the discharge of its duties. As noted above, the evidence was undisputed that 40 p.s.i. is the "proper" or desirable minimum pressure by sound engineering standards; that in the application of its regulations the 40 p.s.i. standard was administratively established and uniformly applied by the District; that the only exception to this standard was where premises fronted on an existing main; and, finally, that this exception was provided for in the District's regulations.

As we noted earlier in this opinion, the reasonableness of the regulations and policy pursuant to which a distinction is made between premises fronting on and premises not fronting on an existing main, even though the pressure in each case may be less than 40 p.s.i., is not in issue. However, having examined the record we point out that it contains convincing testimony in support of the reasonableness of the questioned regulations and policies. For example, in answer to a question as to whether successive extensions of a 6-inch line from Bacon Way along Bacon Court to serve the seven lots in question and future subdivisions beyond the Boies tract would not, at some point, create serious problems, appellant's expert witness answered "I agree that the six (6) inch line would ultimately become inadequate as the number of consumers exceeded the six (6) inch line capacity."

Respondent's reply brief correctly sums up the reasonableness of its position in these words:

It hardly seems to be an unjust discrimination on the part of the Respondent to adopt and uniformly apply a rule that requires a bad pressure situation in new subdivisions to be corrected at the commencement of development. It is difficult to believe that Respondent is subject to a charge of arbitrary and capricious conduct because it does not permit real estate subdividers to install jerry-built systems, sell off the property to unsuspecting purchasers, and then leave Respondent and the individual home owners to cope with the situation when the inevitable day of reckoning arrives. Respondent would have been derelict in its duty to its taxpayers and water users if it had not acted to prevent such an abuse.

Boies cites *Lukrawka* v. *Spring Valley Water Co.* (1915), 169 Cal. 318 [146 P. 640, Ann.Cas. 1916D 277]. That case was a mandamus proceeding to compel the defendant water

company to extend laterals and service to a group of property owners within the boundaries of the defendant's franchise. The Superior Court sustained a demurrer to the amended petition without leave to amend and entered judgment for the defendant. The Supreme Court reversed, holding that the refusal of the defendant to extend its mains to the petitioner's properties was unreasonable and under the circumstances it had a duty to make the extensions. On the question of reasonableness the court said:

"In reaching this conclusion it is of course to be borne in mind that the right of an inhabitant of the municipality or the inhabitants of a particular portion of it to compel the service to them by the water company through the extension of its system, is not an absolute and unqualified right. The fact that the water company had undertaken to serve the entire municipality and that it would be of advantage to an inhabitant thereof, or a number of them, to have the water system extended to supply them would not of itself be sufficient to require or compel the company to make the extension. The duty which the water company has undertaken is of a public nature and to meet a public necessity for the supplying of water to the community. The obligation of the company is not to supply each or any number of inhabitants of the municipality on demand as an absolute right on their part but it has only assumed and become charged with the public duty of furnishing it where there is a reasonable demand for it and a reasonable extension of the service can be made to meet the demand. The right to require the service and the duty of furnishing it by an extension of the water system is to be determined from a consideration of the reasonableness of the demand therefor." (P. 332.)

The two cases are clearly distinguishable. In *Lukrawka* the defendant refused to extend its lines upon any condition. In our case the District offered to extend its system to serve Bacon Court upon Boies' meeting conditions provided for in the District's regulations. Boies is unwilling to meet those conditions.

Under *Lukrawka*, reasonableness of a utility's refusal to extend its service is a question of fact. In the instant case the trial court found impliedly, if not expressly, that the conditions upon which the District offered to extend service to Bacon Court were reasonable. This court is bound by such finding if it is supported by substantial evidence. (*DeYoung* v. *DeYoung* (1946), 27 Cal.2d 521 [165 P.2d 457].) The

evidence in support thereof was substantial. So, too, was the evidence in support of the court's finding of no discrimination by the District in the application of its regulations.

As a second ground for denying the petition for a writ of mandate, the District alleged and proved a contract entered into between it and Boies on March 12, 1956, at the time and for the purpose of furnishing Boies with conditional service to Lots 51 and 59. That agreement also provided that Boies "has abandoned" any right to service it might have with reference to the seven lots in question "until such time as the District finds and determines that a water main may be extended to service said area in accordance with the District's Rules and Regulations then in effect . . . ," limiting such provision however to a period not exceeding 21 years. In its pleadings during the trial and before this court, Boies asserts that the agreement was void because it was made under duress (to obtain water service to Lots 51 and 59) and, in any event, is against public policy. The trial court found against Boies on the issue of the validity of the contract. It is unnecessary for us to express an opinion on this question for the reason that we uphold the trial court in its judgment based upon its finding of no discrimination in the application by the District of its regulations. Such being the case, the contract was unnecessary and superfluous insofar as the seven lots in question were concerned.

The judgment is affirmed.

Bray, P. J., and Duniway, J., concurred.