TOWN OF KEARNY, a municipal corporation,

*v.*

MAYOR AND COUNCIL OF THE CITY OF BAYONNE, a municipal corporation, et al.

[Decided May 3d, 1919.]

1. Under article 32, chapter 152, of the laws of 1917, a municipality may, as consideration for the grant to it of a right of way for its pipe lines in another municipality agree to and actually furnish water to the owners of the tract through which the pipe line runs without the consent of the other municipality.

2. Such a contract and such a furnishing of water is not within the provisions of section 16 of article 32 of chapter 152 of the laws of 1917, nor within the provisions of chapter 265, of the laws of 1907.

3. Section 2 of chapter 265 of the laws of 1907 does not forbid the obtaining of water by an inhabitant of a municipality from another municipality without the consent of the first municipality. *Kearny* v. *Jersey City, 78 N. J. Law* 77, followed.

4. A contract to furnish water to the owners of a tract through which a right of way for a pipe line is obtained in another municipality is incidental to the power to obtain the right of way and to enter into any agreements necessary for the purpose, and the furnishing of water under such a contract is not a doing of a water business within the contemplation of section 16 of article 32 of chapter 152 of the laws of 1917, nor the provisions of chapter 265 of the laws of 1907.

5. Notwithstanding the fact that the supplying of water under a contract made with the municipality is not to commence until December, 1920, another municipality, whose rights, it is alleged, will be infringed by the furnishing of such water, may file a bill to obtain an adjudication in May, 1919.

On bill, &c.

*Mr. Clyde D. Souter,* for the complainant.

*Messrs. Collins & Corbin* (*Mr. Collins*), for the City of Bayonne.

*Messrs. Lindabury, Depue & Faulks (Mr. Faulks)*, for Federal Ship Building Company.

*Messrs. McCarter & English (Mr. English)*, for Blast Furnace Products Corporation.

LANE, V. C.

The bill is filed by the Town of Kearny '(hereafter called Kearny) against the Mayor and Council of the City of Bayonne (hereafter called Bayonne), the Federal Ship Building Compand (hereafter called the Ship Company) and the Blast Furnace Products Corporation '(hereafter called the Furnace Company) to restrain defendants from proceeding under contractual relations, the result of which will be the furnishing of water by Bayonne to the ship and furnace companies, both located within the territorial limits of Kearny, for a period of twenty-five years from January 1st, 1921. For several years prior to September, 1918, Bayonne had been supplied with water under a contract with the New York and New Jersey Water Company (hereafter called the Water Company) ; that company had acquired a private right of way through Kearny from the corner of Belleville and Kearny avenues and had laid water pipes thereon through which water was supplied to Bayonne. This water the Water Company obtained at the intake at the corner of Bellville and Kearny avenues from the East Jersey Water Company under contract. About September, 1918, Bayonne purchased from the Water Company all of its property including, among other things, all private rights of way. Formal instruments of assignment and deeds were delivered so that Bayonne became vested with title to the operating plant of the Water Company. The Water Company has been furnishing Kearny with its water supply under a contract which terminates in December, 1920. Various modifications of the contract between the Water Company and Kearny have been brought to my attention. In the original contract the Water Company reserved the right to (for its own account) furnish water to the Pennsylvania railroad shops and to other consumers on the meadows to whom it was bound to furnish water because of agreements entered into as

consideration for the grant of rights of way. These reserved rights were given up in order that Kearny might be in a position to prosecute the writ of *certiorari* dealt with by the supreme court in *Kearny* v. *Jersey City*, *78 N. J. Law 77*. This appears from documentary evidence including resolutions of the council of the town. The Water Company could not, of course, by such surrender affect the contract rights of its customers. By subsequent agreements the Water Company was permitted to supply customers on the meadows, including those with whom it had contracts as above mentioned, Kearny not waiving any rights after December, 1920. The net result is that the transactions between Kearny and the Water Company have no effect whatever upon the determination of this controversy. A portion of the right of way acquired by the Water Company and by it transferred to Bayonne was obtained from the Passaic Zinc Company under an agreement in which one Beall, the grantee and a predecessor in title of the Water Company, agreed for himself, his heirs and assigns with the zinc company, its successors and assigns

"that he or they will place two six-inch branches in the water pipes to be laid as aforesaid, in such locations as the Passaic Zinc Company shall designate and that he, the party of the second part, and his heirs and assigns, shall furnish to said Passaic Zinc Company, its successors and assigns, upon demand in writing, water from said pipes at the minimum market rate paid by any consumer of an equal quantity of water from said pipe line, so long as said pipes shall remain upon the aforesaid property."

The pipe line now runs through property of the Ship Company, a part of the land covered by this agreement. It became necessary immediately upon the acquisition of the plant of the Water Company by Bayonne that the plant should be increased in capacity; that a larger or new pipe line be installed. The necessities and convenience of the Ship Company required that the line be relocated. The result was agreements between Bayonne, the Ship Company and the Furnace Company (the owner of lands within the Beall agreement) under the terms of which, speaking generally, the pipe line is to be relocated through the lands of the ship and furnace companies and is to

be made of greater capacity. As part consideration Bayonne agrees to furnish the ship and the furnace companies with water for a period of twenty-five years from December 31st, 1920. The ship company agrees to pay $350,000 toward the cost of the change and to advance an additional $150,000 to be repaid by Bayonne through the sale of water to the ship company. The repayment, it is assumed, will take about three years, the ship company using water of the value of about $50,000 a year. Kearny questions the right of Bayonne, the ship and furnace companies to consummate the agreements upon the ground that Bayonne is without authority to furnish water to inhabitants of Kearny without the consent of Kearny, and it rests its contention upon the provisions of section 16 of article 32 of chapter 152 of the laws of 1917 and the provisions of chapter 265 of the laws of 1907.

There being no doubt but that Bayonne may furnish water to inhabitants of Kearny with the consent of Kearny, it is insisted by respondents that complainant is guilty of such laches as amounts to consent. It is said that ever since September, 1918, the contracts with the ship and furnace companies have been a matter of public discussion and have attracted great interest and that it is incredible that the officials of Kearny should not have learned of what was proposed (the contracts were actually made in November, 1918) ; that no objection was made on the part of Kearny until April 17th, 1919, although the entire matter had been in progress for many months in a most open and notorious manner. The chairman of the water committee of Kearny swears that neither he, nor any member of the council, had notice of the proposition until the issue of the "Engineering News Record" of April 10th, 1919. Whether the silence of Kearny can be considered as acquiescence and a consent I do not determine. I prefer to base my conclusion upon more fundamental grounds.

It was intimated in the argument that inasmuch as the sale of water under the contracts is not to commence until December, 1920, an injunction ought not to issue until after that date, Kearny having protected itself from the claim of laches by the filing of the bill. It is specifically provided by chapter 265 of

the laws of 1907 that its provisions may be enforced by bill in equity to enjoin violation. This was referred to by the supreme court in *Kearny* v. *Jersey City, supra* (at *p. 83*). Aside now from the provisions of this act I think that Kearny is entitled now to an injunction to prevent Bayonne from furnishing the inhabitants of Kearny with water, although Bayonne does not intend to commence until December, 1920, if, in fact, Bayonne has no such right. Bayonne has clearly indicated what she intends doing. I think this is a case in which it is eminently proper that the rights of the parties should be fixed at this time. The respondent Bayonne ought not to be permitted to enter into transactions involving the expenditure of the moneys of the public without a determination of its challenged rights. The extent to which the English courts have gone in entertaining bills to declare rights is indicated by the article published in the *New Jersey Law Journal, vol. 42, No. 4, p. 102,* pamphlet April, 1919. This court has construed its powers under the Chancery act of 1915 to declare rights liberally. *Renwick* v. *Hay, 90 N. J. Eq. 148; Re Ungaro, 88 N. J. Eq. 25; Trenton Trust and Safe Deposit Co.* v. *Cook, 88 N. J. Eq. 516.*

It appears to be the well established rule that power in a municipality to furnish water to its inhabitants must be rested upon direct legislation. *19 Rul. Cas. L. tit. "Municipal Corporations"* § *96* (at *p. 788*), and that the grant of power generally to provide a water supply for the inhabitants of a municipality does not carry with it the right to furnish water to inhabitants of other territories. *Child* v. *City of Columbia, 87 S. C. 566; 70 S. E. Rep. 296; 34 L. R. A. (N. S.) 542; Farwell* v. *City of Seattle, Supreme Court Washington, 86 Pac. Rep. 217; Kearny* v. *Jersey City, 78 N. J. Law 77; affirmed, 79 N. J. Law 599; East Newark* v. *New York and New Jersey Water Supply Co., 67 N. J. Eq. 265; Baylies* v. *Borough of North Arlington, 80 N. J. Law 124; Rehill* v. *East Newark and Jersey City, 73 N. J. Law 220; affirmed, 74 N. J. Law 849.*

By article 32 of chapter 152 of the laws of 1917 every municipality is given power to provide a supply of water or an additional supply of water for the public and private uses of the municipality and its inhabitants. By subdivision *d* of section 1

of this article every municipality is given power to purchase, condemn or otherwise acquire the necessary lands and rights or interests in lands, and water rights and rights of flowage or diversion, within or without such municipality, for such purpose. By section 14 power is given to increase the capacity of any water works, plant or plants, to extend any system of water distribution either within or without the municipality, to lay additional mains or lateral connections, to relay or enlarge existing mains and pipes, as the governing body of the municipality shall deem necessary. By section 30 it is made lawful for the governing body of any municipality to enter into all contracts and agreements and do any and all other acts and things necessary to provide water for the public and private uses of such municipality and its inhabitants in accordance with the provisions of article 32. I am of the opinion that power to enter into the agreements and contracts challenged may be rested upon the provisions of article 32 heretofore referred to, and that reliance need not be placed upon the provisions of section 16 under the terms of which any municipality is given the power to supply dwellers in other municipalities through which its mains may pass with water and for that purpose to lay mains in the streets, &c., provided the consent of the municipality, the dwellers in which are to be supplied, be first given. A municipality, having power to enlarge its plant, to relocate its pipes, to acquire locations for such purposes, and to enter into contracts which may be necessary to carry out the purpose of supplying its inhabitants with water, may, I think, contract, as part consideration for the grant to it of rights of way for its mains, to furnish water from such mains, to the owners or occupants of the tracts through which the rights of way run. The court of appeals of New York, in *People, ex rel. City of Rochester,* v. *Briggs, 50 N. Y. 553,* in considering the authority of a municipality to furnish water to villages through which its main ran (at *p. 563*), said: "The power to supply villages with water by contract is incidental to the main purpose and may serve as the means of attaining it." While this case involved the question of the constitutionality of the legislation under consideration, which granted to the municipality in express terms the right to supply

villages, the constitutionality of the legislation being questioned on the ground that such provision was not within the title of the act, and therefore the case is not at all on all fours with that at bar, yet the reasoning of the court is apt.

The properties of the ship and furnace companies are in the tract, the right of way over which was secured originally through the agreement between the zinc company and Beall which contained the provision obligating Beall and his heirs and assigns to furnish water to the zinc company, its successors and assigns from the mains through two six-inch branches. When Bayonne took over the plant of the Water Company including these rights of way and the contracts of the Water Company it obligated itself to carry out the agreements of the Water Company and its predecessors in title. *Omaha Water Company v. City of Omaha, 162 Fed. Rep. 225; affirmed, 218 U. S. 180; 54 L. Ed. 991.* The right of Bayonne to take over the water plant, as it did, I think, must be conceded as settled. Application was made to the supreme court by a taxpayer of Bayonne for a writ of *certiorari* to review the proceedings by which Bayonne sought to acquire the property of the Water Company. The writ was denied. Subsequently, the mayor of Bayonne refused to sign the contract, whereupon application was made to the supreme court for a writ of *mandamus* to compel him to do so. The writ was granted. Subsequently, application was made to this court for an injunction to prevent the acquisition of the plant by Bayonne. The writ was denied. After the acquisition by Bayonne of the plant it found itself in this position: it was necessary to increase the capacity of the plant; to do so it was necessary to increase the capacity of the mains or to lay additional mains through the property of the Ship Company; to accomplish this purpose it was necessary to acquire additional rights of way as it found itself obligated by agreement to continue to furnish the property through which its mains ran with water through two six-inch branches. To accomplish the single purpose of increasing the capacity of its water plant, which it had the authority to do, with the least expense and the greatest advantage to itself and to carry out contract engagements entered into before there was

any restrictive legislation, the contracts under attack, the purpose of which I have heretofore indicated, were entered into.

I am of the opinion that Bayonne had authority to enter into this engagement, apart now from any power under section 16 of article 32 of chapter 152 of the laws of 1917.

It is claimed by Kearny that the right of Bayonne to supply water in other municipalities is circumscribed by the provisions of the last-mentioned section and of chapter 265 of the laws of 1907. With respect to section 16 I conclude that the design was to permit municipalities to go into the business of supplying dwellers in other municipalities through which their mains might run. In other words, to buy and sell water as a commodity. See *East Newark* v. *New York and New Jersey Water Co., 67 N. J. Eq. 265* (at p. *270*). The section provided that the municipality may lay its mains and water pipes in or under any street, &c., in such other municipality, and requires that the consent of the other municipality should be first had and obtained. I am unable to agree with counsel for respondents that the consent referred to in the section is required only in cases in which it is necessary to lay mains and pipes in streets. I think the consent is required where there is any attempt on the part of a municipality to engage in the water business in any other municipality whether it is necessary to lay pipes in the public highways or not, but I do not think that the section applies to a case such as is at bar. Bayonne is not engaged in the business of supplying water to dwellers in another municipality in the sense contemplated by section 16. The engagement of Bayonne to supply water to these particular individuals is a part of a plan by which it has secured additional rights. It is incidental to the main purpose, and, being justified by power granted under other sections of the act, I conclude that section 16 has no application.

Chapter 265 of the laws of 1907 by its first section makes unlawful the supply of water by any person, firm or corporation to any other person, firm or corporation by means of water pipes or conduits conveying water obtained from without the limits of any municipality operating or maintaining a public water-supply. By its second section it makes it unlawful for any

person, firm or corporation within the limits of any municipality operating, &c., a public water-supply to obtain water by means of pipes or conduits from any source outside the limits of such municipality. The first section of the act was construed by the supreme court, in *Kearny* v. *Jersey City, supra,* affirmed by the court of errors and appeals (*79 N. J. Law 599*), to exclude from the prohibition municipal corporations. Whatever my personal opinion may be I am bound by this construction. Section 2 is a complement of section 1, and it seems to me must be construed in the same manner. In view of the opinion of the supreme court, in *Kearny* v. *Jersey City,* with respect to section 1, it must be held that section 2 does not forbid the obtaining of water from a municipal corporation as is Bayonne.

, Further, I think that the statute does not apply to such a case as is now under discussion, where the supplying of water to individuals within the other municipality is not in the course of the carrying on of a business of supplying water, but is an incident to the obtaining of rights which the municipality supplying the water has the power to obtain.

Under the contract under which the Water Company obtained the right to lay the mains the owners of the property secured the right to a supply of water from the mains through two six-inch branches. Subsequent legislation could not, I think, affect this right. While what Bayonne now proposes to do is not to supply water as contemplated by the contract, it has agreed to supply water in another method in larger quantities, and as part consideration the rights under the Beall contract are given up. There is nothing, I think, in the contention of counsel for complainant that by the contracts under attack the rights of the successors in title of the zinc company are given up. It was in consideration of the giving up of these rights that other rights were created.

The supreme court, in the *Kearny Case,* held that chapter 265 did not apply except in a case where the municipality in which the water was to be supplied was itself capable of furnishing an adequate supply and that, although Kearny had a contract under which it was entitled to an adequate supply of water from the Water Company, and had the right to use the

mains and pipes of the Water Company extending to the plant . of the Pennsylvania railroad shops on the meadows, in the vicinity of the plants of the ship and furnace companies, Kearny was not in a position to furnish the railroad company with an adequate supply of water, and the court sustained a contract made between the railroad company and Jersey City by which Jersey City agreed to furnish the railroad company with water for a period of twenty-five years. It is true that the right of Kearny to use the mains of the Water Company was not obtained until eight months after the contract between Jersey City and the railroad company was made. The supreme court based its determination upon the fact that Kearny did not have, at the time the contract was made, the necessary pipe line to supply the water. Since the determination of the supreme court Kearny has not acquired any additional pipe lines. Its contract with the Water Company expires in December, 1920, and after that date it cannot obtain, without further contracts, water in the manner it is now receiving it, nor can it use the pipes of the Water Company. The source of supply of Kearny is stated to be some four and a half miles from the properties of the ship and furnace companies, and in the affidavit submitted by Kearny it is conceded that it will be necessary to lay, in order that water may be supplied to the plants, two thousand three hundred feet of mains over land owned by private individuals. The remainder of the system must be constructed under streets and highways in Kearny. Up to the time of the consummation of the contracts between Bayonne and the ship and furnace companies, no steps had been taken by Kearny to build these mains, nor had any steps been taken with respect to securing a supply of water for the inhabitants of Kearny after December, 1920, other than invitations to various water companies and municipalities to submit propositions. Since the argument of this case, on April 23d, Kearny has appropriated $300,000 for the construction, installation and laying of a main from the present system of the town for the expressed purpose of supplying an adequate supply of water to consumers on the Kearny meadows and had employed a water engineer for consulting purposes. It has also agreed to deposit with the court of chan-

cery such bond as may seem to the chancellor to be desirable to secure the performance by Kearny of contracts which Kearny offers to make to supply the ship and furnace companies with water. It is insisted by Kearny that the passage of these resolutions, and the offer of Kearny to provide a bond, is proof that Kearny will be in a position after December 20th, 1920, to furnish an adequate supply of water. The contracts between Bayonne and the ship and furnace companies were executed on November 20th, 1918, and by no stretch of the imagination can it be said that at that time it appeared that Kearny would be in a position after December, 1920, to furnish an adequate supply of water to consumers on the meadows, and it seems to me that the date of the execution of the contracts is important. It was so deemed by the supreme court in *Kearny* v. *Jersey City.* What Kearny now seeks to enjoin are proceedings of Bayonne looking toward the construction of or relocation of mains, &c., in accordance with the provisions of these contracts. But I am not at all convinced (assuming now that the proceedings of the council of Kearny are entirely regular) that it now appears that after December, 1920, Kearny will be in a position to furnish an adequate supply of water to consumers on the meadows. Nothing has been done except the passage of resolutions, &c. What contracts it may be able to make with water companies for a supply of water to its inhabitants is problematical. It is quite clear, it seems to me, that the ship and furnace companies are not required to wait until December, 1920, in order to ascertain whether they will in fact have an adequate supply of water. It takes time to conclude the necessary negotiations to make the necessary contracts and to do the necessary construction work for the supplying of such a large quantity of water. It is not reasonable that they should be left until December, 1920, or a short time prior thereto, uncertain whether they will get a supply of water or not. I, therefore, think that chapter 265 of the laws of 1907 does not apply because it does not appear that Kearny will be in a position to furnish an adequate supply of water to consumers on the meadows after December.

Concluding, as I do, that the contracts and the subsequent proceedings thereunder are not *ultra vires* Bayonne, and that

there is no legislation prohibiting either Bayonne or the ship and furnace companies from carrying out the provisions thereof, I will advise an order denying the injunction and dissolving the restraint contained in the order to show cause.