55 N.J. Super. 552 (1959)
151 A.2d 385
THE ECLOSS CO., INCORPORATED, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
TOWNSHIP OF PARSIPPANY-TROY HILLS, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 6, 1959.
Decided May 12, 1959.
*554 Before Judges PRICE, SULLIVAN and FOLEY.
Mr. Samuel H. Nelson argued the cause for appellant (Messrs. Meyers and Lesser, attorneys).
Mr. Worrall F. Mountain, Jr., argued the cause for respondent (Messrs. Jeffers, Mountain and Franklin, attorneys).
The opinion of the court was delivered by SULLIVAN, J.A.D.
Plaintiff appeals from a judgment of no cause for action. The complaint filed herein seeks to compel defendant township, pursuant to an alleged agreement or at least on the basis of quantum meruit, to partially reimburse plaintiff for the expense of installing water mains in a section of defendant township.
*555 In 1949 plaintiff, then owning a tract of land located between State Highway Route 10 and Route 5-N in defendant township, desired to develop the same for housing purposes. The tract had little frontage on either road and required the construction of all new streets and roads. Plaintiff proposed to develop its land in sections, with Section 1 located near State Highway 10 being the first section to be developed. At the time defendant operated a municipal water system which did not extend into plaintiff's lands, the nearest existing main being on Route 5-N at the other end of the tract from the proposed Section 1 development. To get public water to Section 1 it was necessary to lay mains across the entire tract. At the time plaintiff had a well in Section 1 and had laid some pipe therefrom in Glacier Drive, the principal street in that section.
On December 10, 1949 plaintiff and defendant entered into a written agreement under which plaintiff was to construct a road in Section 1 and install water mains therein. Plaintiff further agreed to develop the rest of the entire tract within two years and to construct roads and streets as shown on its development map and to install water lines. To insure performance on its part, plaintiff agreed to post a $60,000 surety bond.
The township on its part, among other things, agreed as follows:
"5. The Township does hereby agree that when the water lines and its appurtenances in Section 1 of the Glacier Hill Development, is connected to the Township water system as hereinabove set forth, it will enter into its usual water extension agreement with the Developer reimbursing it to the extent of four-fifths of the costs of said installation or four-fifths of the costs at which the Township could make said installation in said Section 1 of the Glacier Hill Development as shown on the hereinabove mentioned map, as of the date of this Agreement, whichever is the lowest."
It is this provision which underlies plaintiff's cause of action.
After commencing work plaintiff was unable to obtain the surety bond required, so that under the December 1949 agreement *556 it could not secure certificates of occupancy for six houses it had under construction in Section 1. On January 26, 1950, therefore, the original agreement was modified by eliminating the requirement of the surety bond and plaintiff agreed to convey the well and water mains it had built in Section 1 to the township and to operate the water system in the section. Plaintiff further agreed to complete road construction in Section 1 within the two-year period. On its part defendant township agreed to relinquish title to the well and water mains if the plaintiff connected its mains to the township mains at Route 5-N within the two-year period, provided plaintiff entered into the water extension agreement. Those parts of the December 10, 1949 agreement not changed by the modification were to remain in full force and effect.
It is undisputed that plaintiff completed the water main installation from Route 5-N to the Section 1 mains within the two-year period. This involved 7,800 feet of mains plus 11 hydrants. However, the water extension agreement referred to in the December 10, 1949 agreement was never consummated. The record does not indicate the reason for this. Since the hookup to defendant's water supply system was made, defendant has been supplying water through the mains in question and collecting water revenues. The trial court found that these mains have become part of the municipal water supply system.
In its complaint plaintiff alleged that the cost to it of installing the water mains in question was $36,774.85. At the trial, however, it was stipulated that the cost to the municipality for the same installation would have been $27,053.04.
Plaintiff's claim is based on the December 10, 1949 contract as modified or, in the alternative, on quantum meruit for the reasonable value of the work done. The trial judge found for the defendant. As to the contract of December 10, 1949, he found it void for uncertainty because it provided for reimbursing plaintiff for the cost of installing the water *557 mains under terms and conditions which were to be set forth in a water extension agreement to be subsequently made. Since the water extension agreement was never in fact executed, the court concluded that a necessary element of the contract was missing. The court also indicated that even if the water extension agreement had been entered into, the contract of December 10, 1949, was null and void because it called for the expenditure of public money without any budgetary or other appropriation in violation of N.J.S.A. 40:2-29 and N.J.S.A. 40:50-6. These sections provide as follows:
N.J.S.A. 40:2-29. "Except as may be otherwise provided in section 40:2-31 of this Title, no officer, board, body or commission shall, during any fiscal year, expend any money (except to pay notes, bonds, or interest thereon), incur any liability, or enter into any contract which by its terms involves the expenditure of money:
a. For any purpose for which no appropriation is provided in the budget or by temporary appropriation pursuant to section 40:2-12 of this Title, or
b. In excess of the amount appropriated for any such purpose.
Any contract, oral or written, made in violation hereof shall be null and void as to the county or municipality, and no moneys shall be paid thereon. Nothing in this section contained, however, shall prevent the making of contracts or the spending of money for capital projects to be financed in whole or in part by the issuance of notes, or bonds, nor the making of contracts of lease or for services or for fuel to be used for heating purposes for a period exceeding the fiscal year in which such contract is made, when otherwise provided by law; provided further, that nothing in this section nor in section 40:50-6 of this Title shall prevent a municipality from making a contract for the spending of money for the purchase of the right, title and interest in the right-of-way of any street railway company in the municipality, when said right-of-way extends in, over and along any public street or highway in the State of New Jersey and the improving or paving of said right-of-way after the same has been acquired."
N.J.S.A. 40:50-6. "No municipality shall enter into any contract, the cost of which is to be met by funds not included in the budget of appropriations for the year, unless prior thereto there shall have been regularly adopted by the governing body an ordinance authorizing an appropriation sufficient to meet the cost of carrying out the provisions of the contract. This section shall not apply to the use of funds of departments, for the operation of which budget *558 appropriations are not made, nor to contracts for professional services for the liquidation or foreclosure of tax title liens in such municipalities wherein it is agreed that the cost of the services are to be paid, in all or in part, from the funds derived, or to be derived from the redemption of liened property or the sale of foreclosed property, subject to approval of the Department of Local Government."
The court concluded that the foregoing statutory provisions "apply to contracts or agreements of alleged indebtedness for extension of water mains," and that since there had been no budgetary or other appropriation of moneys for this reimbursement, the effect was to render the contract null and void. By the same reasoning the court also concluded that these appropriation statutes (supra) barred any recovery in quantum meruit. The court conceded that the rule was a harsh one, but justified it on the ground that it was based on sound public policy.
It is clear that the plaintiff had no complete contract. The instrument of December 10, 1949 provided for a further agreement in which the terms of reimbursement were to be set forth. This step was never taken and the contract is therefore fatally defective. It is impossible to supply the missing terms of reimbursement as suggested by plaintiff, because the proofs indicate that there was no such thing as a "usual water extension agreement."
The defendant introduced in evidence a number of water extension agreements which it had executed with developers and owners. These agreements follow a general pattern in that the developer or owner is to be reimbursed for the cost of the extension of the water main out of water revenues collected by the township from users who tap into the particular extension. These agreements provide that the township is to segregate water revenues from the particular extension and pay a specified percentage thereof to the developer or owner. The agreements, however, are not identical in that the percentage of water revenue to be turned over varies. Most of the agreements call for the payment *559 of 85% of water revenues. Some, however, call for 75%. Under the agreements the balance of the revenue is retained by the township for its maintenance and pumping charges for furnishing water to the particular extension. Most of the agreements remain in force until the developer or owner has been fully repaid the cost of the extension. Others are for a term of 10 or 12 years, with the proviso that if the full amount has not been repaid during the term, the developer or owner relinquishes its right to receive any balance and the sum received during the term "shall be in full satisfaction." Thus it can be seen that while these water extension agreements follow a pattern, they are not uniform. It is impossible for the court to hold that the parties herein had in fact agreed to particular terms of reimbursement. Therefore, the claim based on an express contract must fail for lack of certainty and completeness.
We find however that plaintiff's claim in quantum meruit is well founded and that plaintiff is entitled to recover.
The amount of plaintiff's claim on quantum meruit is not an issue since it was stipulated by defendant township that the cost to it of installing the water mains which are the subject of this suit would have been $27,053.04, and plaintiff on its quantum meruit count has agreed in its brief to limit its claim to four-fifths of this cost figure.
The trial judge dismissed the quantum meruit claim on the ground that no monies had been appropriated for it as required by N.J.S.A. 40:2-29 and N.J.S.A. 40:50-6 and that said claim was therefore unenforceable.
It must be kept in mind that the good faith of plaintiff has not been questioned. Believing that it had a valid contract for reimbursement, plaintiff did install the mains at a cost to it of $36,774.85 and connected them with defendant's water supply system. It did transfer the mains to defendant. Since the installation of the mains and down to the date of suit defendant has used these mains as part of its water supply system and collected in water revenues from these mains the sum of $8,951.36. To bar plaintiff's *560 claim in quantum meruit, the contract having been determined to be void, would result in a forfeiture.
Where the municipal obligation to furnish water system service is mandatory, a civil action in lieu of mandamus will lie to enforce the obligation notwithstanding the fact that the municipality has made no appropriation to defray the cost thereof. Reid Development Corporation v. Township of Parsippany-Troy Hills, 10 N.J. 229 (1952). The mandatory obligation arises in circumstances wherein the refusal to furnish water system service would be arbitrary and hence an abuse of discretion. The fact that the municipality undertook to furnish the water service in this case and arranged to have the developer install the mains on a reimbursement basis, indicates that the municipality recognized that under the circumstances presented it had no legal ground for refusing to extend its water supply system and service into the particular area. In a somewhat similar situation involving the same township, where a contract had been entered into with a developer dealing with reimbursement for the cost of installing water mains, the Supreme Court held that the appropriation laws requiring advance budgeting were not violated by the agreement. Lake Intervale Homes, Inc. v. Parsippany-Troy Hills, 28 N.J. 423 (1958). The court noted that the developer had acted in good faith and had installed the water pipes with the knowledge and consent of the township. In that case the court affirmed a judgment for money damages against the township.
The reasoning in Lake Intervale Homes, Inc., supra, applies to the present claim in quantum meruit. Further than that, however, the agreement between the parties, even though unenforceable, did contemplate that plaintiff was to look for reimbursement only out of water revenues realized on the particular mains installed. To allow plaintiff a general recovery here would mean that it would be entitled to immediate payment of the full amount of its claim. This would be greater relief than even plaintiff bargained for. *561 Plaintiff, therefore, cannot complain if the court, while recognizing its claim on a quantum meruit basis, limits the source of the funds to be used in payment thereof to water revenues received from the particular water mains. Additionally, recovery on this basis will avoid any conflict with the appropriation statutes.
The defendant has argued that, in the absence of any legislative authority, it is illegal for a township to acquire water main extensions and pay for the same by pledging the water revenues from such extensions. According to defendant, there is no legislative sanction for this. The defendant's position is somewhat inconsistent in that it has entered into any number of water extension agreements over the years, all of which provide for the very thing of which defendant now complains. Moreover, defendant's water facility is a municipally-owned public utility established under the legislative authority of N.J.S.A. 40:62-47 et seq. See Reid Development Corporation v. Township of Parsippany-Troy Hills, 31 N.J. Super. 459 (App. Div. 1954). Use of water revenues to pay for extensions of water mains is within the framework of that statute. N.J.S.A. 40:2-33 supports this concept.
Defendant also suggests that the granting of relief to plaintiff even in quantum meruit would circumvent the bidding statutes, N.J.S.A. 40:50-1, and weaken the firm public policy underlying this law. Justice Burling in the Lake Intervale case, supra, 28 N.J. at page 431, in dealing with the same question recognized the possibility of abuse. He found, however, that under the facts of that case the spirit of the competitive bidding statutes had not been violated. The situations are analogous. Here, the cost to the builder was $36,774.85. The township admits that if it had done the work it would have cost $27,053.04. The plaintiff is limiting its claim to $21,642.43. The good faith of the parties is not impugned. These facts are well within the ruling in Lake Intervale, supra, that the spirit of the competitive bidding statutes had not been violated.
*562 The judgment entered herein is reversed and the case is remanded with directions to the trial court to enter a judgment on quantum meruit in plaintiff's favor for the agreed sum of $21,642.43. Payment of the judgment is to be limited in the following manner: No interest is to be allowed thereon since all of the water extension agreements in evidence specifically bar interest charges on the sum due the developer. It was, therefore, the contemplation of the parties that plaintiff would not receive interest on the sum due it. The judgment will direct the defendant township to segregate water revenues received from the particular water mains, and after deducting an amount, to be fixed by agreement of the parties or by the trial court on further hearing if necessary, for maintenance and pumping charges for furnishing water to said mains, to pay the balance of said water revenues to plaintiff until it has been fully paid the said amount of $21,642.43. Satisfaction of plaintiff's claim will be limited to these payments. This ruling will not apply to water revenues heretofore collected on these mains by defendant township. It does not appear that these revenues were segregated and held in any escrow fund, and to require defendant to account for past water revenues collected would require the appropriation and application of other monies.
Reversed.