106 N.J. Super. 79 (1969)
254 A.2d 151
ROBERT DRAKE AND DOROTHY E. DRAKE, HIS WIFE, PLAINTIFFS,
v.
TOWN OF BOONTON, DEFENDANT-THIRD-PARTY PLAINTIFF,
v.
CATHERINE D. PHELAN, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided June 9, 1969.
*81 Mr. James M. Kenihan, for plaintiffs (Messrs. Fullerton, Kenihan & Porfido, attorneys).
Mr. Robert E. Yadlon for defendant-third-party plaintiff (Messrs. Maraziti & Maraziti, attorneys).
Mr. John H. Crammond, for third-party defendant (Messrs. McDonald, Podesta & Meyers, attorneys).
GASCOYNE, J.C.C. (temporarily assigned).
This matter comes on before the court by way of a complaint in lieu of prerogative writs to compel defendant municipality to supply plaintiffs with water. There appears to be little or no factual dispute. The parties have stipulated the following facts:
(1) Plaintiffs are the owners of Lots 12, 13 and 14 as they appear on the tax map of the town of Boonton. These lots front on Green Street.
*82 (2) On June 4, 1956 a resolution was duly adopted by the municipal governing body authorizing the entry into a contract with James W. and Catherine D. Phelan for the construction of a water main along Green Street.
(3) Pursuant to this resolution a contract was ultimately entered into by and between the parties. The contract is attached to the complaint. The Phelans constructed the water main and the main was accepted by the town pursuant to the resolution and the agreement, so that the town is presently the owner of this main.
(4) Plaintiffs filed an application in the proper form requesting that they be supplied with water. They were advised that before such application could be honored that they would have to pay their proportionate share of the cost of installation, in accordance with the terms of the contract.
(5) Plaintiffs refused to make such payment.
(6) There are other properties which face on Green Street.
It further appears from the undisputed facts that another property owner has complied with the terms of the contract and has paid a pro rata share.
Procedurally, Boonton, by leave of the court, has joined Catherine D. Phelan, as a surviving party to the contract, as a third-party defendant. Mrs. Phelan has filed an answer and counterclaimed, asking that the court declare the contract valid and binding on the Drakes. In the alternative, should the contract be held to be invalid, she asks the court to enter judgment against Boonton in the sum of $3,500, the agreed cost to the Phelans for the construction of the main. If the court refuses to do any of the foregoing, Mrs. Phelan requests that the ownership of the main be declared in her.
The legal questions as framed are: (1) Is the contract between the town and the Phelans valid? If so, is the contract entered into between the Phelans and the town enforceable against a third party, such as the Drakes? (2) Can the town be compelled to supply water to the Drakes? (3) If the contract is not valid, is Mrs. Phelan entitled to a judgment *83 in the sum of $3,500 against the town? (4) Or, in the alternative, is she entitled to have the ownership of such main returned to her?
It would appear from a factual point of view that initially when the Phelans applied to the town to have water supplied to them, the town refused to comply with this request of the extension of the water main to the Phelans' property. The reasons given for this refusal were that the construction costs would be unreasonably high, due to the rocky terrain of the area; that at the time the Phelan residence was the only one situated on that part of Green Street, and therefore the return on the investment would be too small to warrant the cost of installation; and that there were no immediate prospects of development of the properties which could be serviced by the line.
It was under these circumstances that the resolution mentioned above was adopted, and the subsequent contract was entered into between the town and the Phelans.
A municipality has the power to enter into a contract for the construction of the necessary facilities to supply water within its boundaries. N.J.S.A. 40:62-47 provides as follows:
"The governing body may adopt all ordinances and resolutions, enter into all agreements and contracts, and do all other acts necessary to provide water to the public and private uses of the municipality and its inhabitants in accordance with the provisions of 40:62-48 to 40:62-105 of this title."
This broad grant of power to municipalities makes it clear that it is within their specific province to supply water to the residents within their boundaries. When it becomes necessary for a determination to be made respecting the enlargement or extension of a municipal water system, several factors come into play in which the discretion of the municipal officials may be exercised. This was set forth in Reid Development Corp. v. Parsippany Troy Hills, 31 N.J. Super. 459 (App. Div. 1954), which quoted the following from 56 Am. Jur., Waterworks, § 61, p. 966:
*84 "A municipality which engages in furnishing water to its inhabitants is generally regarded as having a governmental discretion as to the limits to which it is advisable to extend its mains, and an extension will not be compelled by the courts at the instance of an inhabitant. Thus, it has been held that it is the function of the municipal authorities to determine when the necessity exists for the extension of a main to a particular territory, what size main is needed, and whether the financial condition of the city will warrant the expenditure, and their discretion, exercised in good faith, cannot be controlled by mandatory injunction. Accordingly, it is held in several cases that a municipality is not bound to furnish a supply of water to every inhabitant who demands it regardless of the expense involved or the returns that will result, and that there is no duty to extend water mains where the cost thereof and the return therefrom could be greatly disproportionate." * * * (at p. 463)
The determination of the town officials not to extend water service to the Phelans in 1956 thus was a proper exercise of discretion, taking into consideration their determination that the operation would not be economically feasible and that the return on the investment would be outweighed by its cost.
The municipality had the power to enter into an agreement with the Phelans with respect to the construction of a main at the expense of the individual property owner, so that the agreement per se was not illegal. Paragraph Sixth of the agreement provides:
"If any party owner desires to connect with said water system along the portion of the pipe installed by the party of the first part, the party of the second part herein shall first require said applicant to repay to the party of the first part a proportionate share of the cost of the installation of the water main."
By this provision the municipality abdicated its function of collecting water rents under N.J.S.A. 40:62-77 to a private individual.
There is a complete absence of any authority in this jurisdiction, or in fact, any jurisdiction, which authorizes such abdication. As was said by Justice Heher in the case of Reid Development Corp. v. Parsippany-Troy Hills Twp., 10 N.J. 229 (1952):
*85 "The water facility is a municipally owned public utility established under legislative authority. R.S. 40:62-47, et seq. The provision of water for the public and private uses of the municipality and its inhabitants is the exclusive province of the local agency; and it is elementary that the exercise of the power must be in all respects fair and reasonable and free from oppression." (at p. 232)
A review of the cases pertinent to this subject indicates that the municipality must adopt ordinances which are fair and just to all its inhabitants. Here there is no ordinance per se governing what would be a fair and just fee to a property owner fronting on Green Street.
In the second Reid case, as well as in Ecloss Co., Inc. v. Parsippany-Troy Hills Tp., 55 N.J. Super. 552 (App. Div. 1959), certification denied 30 N.J. 561 (1959), and in Lake Intervale Homes, Inc v. Parsippany-Troy Hills Tp., 28 N.J. 423 (1958), the court was concerned with the question of who should bear the ultimate cost of installation of extensions of the municipal water supply facilities. In each instance the developer bore the initial cost, but was subsequently reimbursed, at least partially, for that cost. Each case stands for the proposition that the municipality and the individual can enter into an agreement whereby the initial cost would be borne by the individual, but there would be reimbursement over a number of years from the revenues collected in the operation of the system.
Paragraph Sixth of the 1956 agreement is invalid and unenforceable in so far as it relates to the payment of a proportionate share to the Phelans by those who subsequently tie in to this water supply extension. An individual cannot act as a collector of revenues for a municipality.
Under the circumstances of this case, there would be no lawful reason why Boonton should not be required to supply water to the Drakes. The facility to accomplish this is now available and under the ownership and control of the municipality.
Since Boonton has now taken over the operation and maintenance of the extension, it would be inequitable to require the *86 return of title to Mrs. Phelan. Nor would it be just to require her to bear the entire expense of the improvement.
Although this action has its venue in the Law Division pursuant to the rules, this being an action in lieu of prerogative writs the Superior Court has inherent equitable jurisdiction. N.J. Const. (1947), Art. VI, § 3, par. 4. The relief prayed for by the parties includes any other equitable relief that the court in its discretion deems fit.
One of the inherent powers of a court of equity is to grant reformation of a contract so that it conforms with what the parties intended. However, the court may not write a new contract for the parties but must look to the intent of the parties to determine if reformation is in order. S.P. Dunham & Co. v. 26 E. State St. Realty Co., 134 N.J. Eq. 237 (Ch. 1943). There is no question that the parties here intended that the initial cost of the installation of the water system would be borne by the Phelans, since the municipality felt that at that particular time the expenditure of municipal funds was unwarranted. It is equally clear that the municipality, upon completion of the installation, intended to take over the installation and to maintain it. A reading of the contract leads to the inescapable conclusion that the municipality felt that the Phelans ought to be reimbursed for this expenditure. The only defect in the contract was the method of reimbursement. The contract will therefore be reformed to provide as follows:
Third party defendant Catherine Phelan will be reimbursed in the sum of $3,500, which represents the total cost of the installation. Such reimbursement shall be paid out of revenues collected by the municipality from other persons who subsequently tie into the extension pursuant to ordinance or ordinances duly adopted by the governing body.
It would also seem to the court that the party who has already paid his pro rata share should be reimbursed for the excess over and above such share after the municipality has decided the reasonable assessment and/or tie-in fee that *87 would be fair and just to all persons along the particular main.
Judgment in favor of the respective parties will be entered as follows: (1) plaintiff will be entitled to tie in, subject to payment of reasonable fee pursuant to duly adopted ordinance or ordinances; (2) title to the extension will remain in the Town of Boonton, and (3) Catherine Phelan is to be reimbursed in the sum of $3,500 under the conditions set forth above.